UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS MALDONADO, on behalf of
himself and those similarly situated,

        Plaintiffs,

vs.

TEXAS DE BRAZIL (TAMPA)
CORPORATION , TEXAS DE BRAZIL
(ORLANDO) CORPORATION, TEXAS
DE BRAZIL (FT. LAUDERDALE)
CORPORATION, TEXAS DE BRAZIL
(GULFSTREAM) CORPORATION,
TEXAS DE BRAZIL (MIAMI)
CORPORATION, TEXAS DE BRAZIL
(SOUTH BEACH) CORPORATION,
TEXAS DE BRAZIL (PALM BEACH)
CORPORATION, and TEXAS DE
BRAZIL (DADELAND)
CORPORATION, Florida For Profit
Corporations, TEXAS DE BRAZIL
(OPERATING) CORPORATION, and
TEXAS DE BRAZIL CORP., Foreign
For Profit Corporations,

        Defendants.        /

CASE NO.:

CLASS ACTION ALLEGATIONS

**CLASS AND COLLECTIVE ACTION COMPLAINT**
("Class Representation")

Plaintiff, LUIS MALDONADO ("Plaintiff"), on behalf of himself and those similarly situated, sue the Defendants, TEXAS DE BRAZIL (TAMPA) CORPORATION, TEXAS DE BRAZIL (ORLANDO) CORPORATION, TEXAS DE BRAZIL (FT. LAUDERDALE) CORPORATION, TEXAS DE BRAZIL (GULFSTREAM) CORPORATION, TEXAS DE BRAZIL (MIAMI) CORPORATION, TEXAS DE BRAZIL (SOUTH BEACH) CORPORATION, TEXAS DE BRAZIL (PALM BEACH) CORPORATION, and TEXAS DE

BRAZIL (DADELAND) CORPORATION, Florida For Profit Corporations, TEXAS DE BRAZIL (OPERATING) CORPORATION, and TEXAS DE BRAZIL CORP., Foreign for Profit Corporations (hereinafter "Defendants"), for failing to pay minimum wages and overtime to all carvers a/k/a "gauchos" (hereinafter "carvers" or "class members") who worked in the State of Florida, pursuant to 29 U.S.C. § 201, et al. (hereinafter the "FLSA") and Fla. Const. Art. X § 24.

## Nature of Case

1.      Defendants collectively own and operate approximately eight (8) "Texas De Brazil" restaurants throughout the State of Florida.

2.      In an effort to reduce labor costs, Defendants, orchestrated a common policy and practice of paying its carvers the tip-credit minimum wage while performing non-tipped duties, specifically preparing meats to be served to guests.

3.      Defendants violated the FLSA and Florida Constitution by failing to pay class members that were employed in Florida at anytime within the past five (5) years at least the full minimum wage for all hours worked pursuant to the FLSA and Fla. Const. Art X § 24(c) ("Employers *shall* pay Employees Wages no less than the Minimum Wage for *all* hours worked in Florida.") (emphasis added).

4.      Additionally, Plaintiff seeks a declaration of rights pursuant to Rule 57, Fed.R.Civ.P., and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.

## Parties

5.      Plaintiff was an hourly paid carver who worked for Defendants within the last five (5) years.

6.      Plaintiff worked for Defendants as a carver from approximately March 2011 through

the August 13, 2013, at their Tampa, Florida location.

7.     The proposed class members worked for Defendants at its restaurants throughout Florida as carvers.

8.     Plaintiff and the proposed class members were subjected to similar violations of the FLSA. The class of similarly situated employees or potential class members sought to be certified under 29 U.S.C. §216(b) is defined as:

> **All persons who worked for Defendants as carvers within Florida during the three (3) years preceding this lawsuit, and who were not paid at least the full minimum wage pursuant to the FLSA for each hour worked.**

The precise size and the identity of the FLSA Class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants and its related and affiliated entities.

9.     Plaintiff also seeks class certification under Fed. R. Civ. P. 23 of the following state law sub-class:

> **All persons who worked for Defendants as carvers within Florida during the five (5) years preceding this lawsuit, and who were not paid at least the full minimum wage pursuant to Fla. Const. Art. X § 24(c) for each hour worked.**

10.     Each of Defendants' principal businesses where the issues which are the subject matter complained of took place are located Florida, and is therefore within the jurisdiction of this agency.

11.     Based on information and belief, Defendants opened each Texas De Brazil location under a differently named corporate entity.

12.     Even though different locations were operated through different entities, each Texas De Brazil location was operated the same way, and each utilized the same pay practices and

procedures.

13.     Each Texas De Brazil location shares and has interrelated operations.

14.     Each Texas De Brazil location shares common officers and managers, regional managers, management companies, corporate trainers and other managers.

15.     Each Texas De Brazil location shares a common centralized control of labor relations located in the Texas De Brazil Corporate office, in Dallas, Texas.

16.     The corporate office handles payroll for all of its locations.

17.     Texas De Brazil's Human Resource Department, which is located at the corporate office, handles all human resource-related functions for the individual store locations.

18.     The same Human Resource Department issues all policies with regard to the human resource issues for the store locations.

19.     The individuals who work at the restaurant locations are required to follow all human resource policies issued by the corporate office.

20.     The same Human Resource Department administers fringe benefits such as 401(k) and pensions for employees at all restaurant locations.

21.     The Marketing Department, located at the corporate office, performs advertising functions for all restaurant locations.

22.     Individual store locations forward "new hire" paperwork to the corporate office when a new employee is hired.

23.     The corporate office drafts job descriptions for all of its restaurant locations.

24.     For example, the Human Resource Department in the corporate office recently drafted a job description for its "staff carver trainer" uniform for all locations.

25.     Additionally, the employee handbook was the same for each Texas De Brazil

location.

26.     Policies, memorandum and management directives for any or each of the Texas De Brazil locations originated out of the Texas De Brazil corporate headquarters.

27.     Defendants' restaurant locations in nearby cities share employees.

28.     For example, when the Tampa location opened, Texas De Brazil Orlando sent employees from the Orlando restaurant to Tampa to work and help open the store.

29.     In addition, restaurants in south Florida have sent employees from one store to a nearby store to assist when needed.

30.     In fact, the Department of Labor has directed Texas De Brazil Miami to pay back overtime pay to its employee when they worked at nearby locations and were not paid overtime as a result of working the extra hours at the nearby location.

31.     Restaurant locations are owned by Texas De Brazil Holding Company.

32.     Even though each Texas De Brazil location was registered under a different corporate entity, the Texas De Brazil locations were actually operated as one integrated enterprise and/or are joint employers of Plaintiff.

### Jurisdiction & Venue

33.     This action is brought under the FLSA and Florida law to recover from Defendants minimum wages, liquidated damages, and reasonable attorneys' fees and costs. This action is intended to include each and every hourly paid carver who worked for Defendants at any Texas De Brazil location at any time within the past five (5) years in the **State of Florida**.

34.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and the FLSA, the authority to grant declaratory relief under the FLSA pursuant to 28 U.S.C. §2201 et seq., and supplemental jurisdiction over Plaintiff's Florida Constitution claim pursuant to 28 U.S.C.

§1367.

35.     This Court has jurisdiction and venue over this complaint as each of Defendants'
violations of the FLSA complained of took place in Hillsborough County, Florida as well as in
other counties throughout Florida.

<h3 align="center">General Factual Allegations</h3>

36.     Plaintiff worked as a carver for Defendants at their Texas De Brazil location in
Tampa, Florida.

37.     At all material times (2009-13), Plaintiff and those similarly situated employees
were paid pursuant to a "tip credit" method and were paid the minimum wage minus the tip
credit.

38.     At all material times, Defendants were an enterprise subject to the FLSA and the
Florida Constitution's provision on minimum wages.

39.     At all material times, Defendants were an enterprise engaged in commerce or in
the production of goods for commerce, in that said enterprise has had at least two employees
engaged in commerce or in the production of goods for commerce, or employees handling,
selling, or otherwise working on goods or materials that have been moved in or produced for
commerce by any person.

40.     Defendants' employees ran credit card transactions which transacted business in
interstate commerce on a daily basis and also handled such goods as napkins, silverware,
appliances, food items, and restaurant equipment which had travelled in interstate commerce on
a daily basis.

41.     At all material times (during the last five years), each restaurant location named as
a Defendant has had an annual gross volume of sales made or business done of not less than five

6

hundred thousand and 0/100 dollars ($500,000.00) (exclusive of excise taxes at the retail level which are separately stated).

42.     Defendants are in the business of providing food and drinks to the general public.

43.     Specifically, Defendants operate approximately seven (7) Texas De Brazil restaurants throughout the State of Florida.

44.     Collectively, Defendants employed hundreds of carvers ("class members" or the "class") at their Florida Texas De Brazil locations in the last five (5) years.

45.     Defendants employed Plaintiff as an integrated enterprise and/or joint employers.

46.     Plaintiff and the class members worked in the State of Florida without being paid at least the full minimum wage for all hours worked.

47.     Defendants controlled and/or were responsible for the work of class members.

48.     Plaintiff and all similarly situated employees did a specific job, i.e. prepare and serve meats, which was/is an integral part of the restaurant business of Defendants.

49.     Defendants utilized the tip credit and paid Plaintiff and all similarly situated carvers under the applicable tipped minimum wage.

50.     Notwithstanding Defendants' preference to pay Plaintiff and the class members through the tip credit, Defendants chose to require Plaintiff pay for uniforms (shirts, pants, vests, aprons, and boots) directly from their minimum wages which were subject to the tip-credit. Attached as Exhibit "A" is the policy requiring Plaintiff and those similarly situated carvers to buy their uniforms from the restaurants where they worked.

51.     Uniform deductions were taken from the class members' hourly wage.

52.     The costs of the uniform deductions cause the carvers' hourly wages to go below minimum wage.

53.     Second, Defendants had a practice of requiring its carvers to prepare meats.

54.     Carvers arrived prior to the opening of the store in order to prepare meats.

55.     Carvers were still paid pursuant to the tip credit while preparing meats while performing non-tipped duties.

56.     Carvers' meat preparation duties easily exceeded 20% of their weekly activities in violation of the law.

57.     For these reasons, Defendants violated the terms of the tip-credit and the FLSA's and Florida Constitution's provision on minimum wages.

58.     As a result of these common policies, Plaintiff and each similarly situated carver is entitled to receive repayment of the tip credit for each hour worked due to the improperly deductions from their wages.

59.     During their employment, one or more of the Plaintiffs complained about the illegal practices described above to management of Texas de Brazil and Texas de Brazil took no action to stop the illegal practices.

60.     The additional persons who may become Plaintiffs in this action are employees who held positions similarly situated to Plaintiff and who suffered from the same pay practice of being improperly paid the tipped minimum wage and overtime.

61.     Upon information and belief, the records, to the extent any exist, concerning the number of hours worked and amounts paid to Plaintiff and other similarly situated carvers are in the possession and custody of Defendants.

### Collective/Class Factual Allegations

62.     Class members are treated equally by Defendants.

63.     Defendants subjected class members to the same illegal practice and policy by forcing the Class Members to pay for uniforms and performing work not within the scope of a tipped occupation.

64.     Defendants subjected class members to the same illegal practice and policy by requiring the class members to work at different TDB locations in one or more workweeks and paying them by separate paychecks in an effort to avoid overtime.

65.     Defendants have employed approximately over 300 class members who were paid pursuant to a tip credit in the State of Florida within the past five (5) years.

66.     Defendants pay class members in the same manner.

67.     Plaintiff and all class members worked in the State of Florida.

68.     Plaintiff and all class members in the State of Florida were not guaranteed at least the full minimum wage for all hours worked.

69.     Plaintiff and all class members were improperly paid the tipped minimum wage per hour.

70.     Defendants failed to keep accurate time and pay records for Plaintiff and all class members pursuant to 29 U.S.C. § 211(c) and 29 C.F.R. Part 516.

71.     Defendants failed to maintain accurate time and pay records with regard to worked performed by the class members regarding how many hours in each workday are worked in occupations in which the employee receives tips and how many are worked in any occupation in which the employee does not receive tips.

72.     Defendants' failure to keep accurate time and pay records casts the burden on Defendants to disprove the testimony of Plaintiff and all class members regarding the illegal deductions which they were required to pay.

73.    During the relevant period, Defendants violated the FLSA and Fla. Const. Art. X
§ 24 by improperly taking the tip credit.  Defendants have acted willfully in failing to pay
Plaintiff and the class members in accordance with the law.

74.    Plaintiff has hired the undersigned law firms to represent him in this matter and is
obligated to pay them reasonable fees and costs if he prevails.

### Class Action Allegations

75.    The claims under the FLSA may be pursued by those who opt-in to this case
pursuant to 29 U.S.C. § 216(b). The claims under the Florida Constitution may be pursued by all
similarly situated persons who choose not to opt-out of the state law sub-class pursuant to Fed.
R. Civ. P. 23.

76.    The number of individuals in the class is so numerous that joinder of all members
is impracticable.

77.    The exact number of members of each class can be determined by reviewing
Defendants' records.

78.    However, Plaintiff is informed and believes that there are potentially hundreds of
eligible individuals in the defined class.

79.    Plaintiff will fairly and adequately protect the interests of the class and has
retained counsel that is experienced and competent in class action and employment litigation.

80.    Plaintiff has no interests that are contrary to, or in conflict with, the members of
the class.

81.    A collective/class action suit, such as the instant one, is superior to other available
means for fair and efficient adjudication of the lawsuit.

82.     The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the class to individually seek redress for the wrongs done to them.

83.     A collective and class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.

84.     Absent these actions, many members of the class likely will not obtain redress of their injuries and Defendants will retain the proceeds of their violations of the FLSA and the Florida Constitution.

85.     Furthermore, even if every member of the class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

86.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

87.     There is a well-defined community of interest in the questions of law and fact affecting the class as a whole. The questions of law and fact common to the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

> a.     Whether Defendants' employed carvers within the meaning of the applicable statutes, including the FLSA/Florida Constitution;
>
> b.     Whether carvers were uniformly, willfully and wrongfully paid the tipped minimum wage;
>
> c.     Whether Defendants failed to pay Plaintiff and members of the class all minimum wages owed to them;

11

d.    Whether Plaintiff and the class members were required to pay for uniforms;

e.    What remedies are appropriate compensation for the damages caused to Plaintiff and each member of the class; and

f.    Whether Defendants' failure to compensate Plaintiff and the class members at the applicable minimum wage rates was willful, intentional or done with reckless disregard.

88.    The relief sought is common to the entire class including, *inter alia:*

a)    payment by the Defendants of actual damages caused by their failure to pay minimum wages pursuant to the FLSA and Florida Constitution;

b)    payment by the Defendants of liquidated damages caused by their failure to pay minimum wages pursuant to the FLSA and Florida Constitution;

c)    a declaration that Defendants improperly deducted uniform expenses from its carvers;

d)    a declaration that Defendants violated minimum wage laws;

e)    payment by the Defendants of the costs and expenses of this action, including the attorneys' fees of Plaintiff's counsel.

89.    Plaintiff's claims are typical of the claims of members of the class. Plaintiff and members of the class have sustained damages arising out of the same wrongful and uniform employment policies of Defendants in violation of the FLSA and the Florida Constitution.

90.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance.

FIRST CAUSE OF ACTION
VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §216(b)
(Unpaid Minimum Wages)

91.     Plaintiff alleges and reincorporates all allegations contained in Paragraphs 1 – 90 as if incorporated herein.

92.     At all relevant times, Defendants have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

93.     At all relevant times, Defendants employed, and/or continue to employ Plaintiff and similarly situated carvers.

94.     As stated above, Defendants have a policy and practice of forcing their carvers to pay for uniforms which were the Defendants' own expenses.

95.     In addition, Defendants uniformly required its carvers to work more than 20% of their workweeks performing non-tipped job duties.

96.     Such a policy and practice violates the FLSA's tip credit provisions by paying its carvers an hourly wage below minimum wage.

97.     Defendants' failure to pay Plaintiff and other carvers the full minimum wage is a violation of 29 U.S.C. § 206.

98.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

99.     Further, Defendants have been made aware of FLSA related violations as they were frequently investigated by the United States Department of Labor.

100.    As a result of a multi-location investigation, Defendants paid $178,190.25 in unpaid overtime wages to employees, including Florida in 2009.

101.    Defendants also paid its Florida tipped employees back wages as a result of its failure to pay overtime at the correct rate in 2011.

102.    In 2011, the Department of Labor also found back wages owed to employees who were not paid overtime at time and one half their regular rate of pay due to working at more than one location.

103.    Yet, the violations continued and not all eligible employees were paid.

WHEREFORE, Plaintiff, on behalf of himself and those similarly situated, demands judgment against Defendants for unpaid minimum wages, an additional and equal amount of liquidated damages, or if liquidated damages are not awarded then prejudgment and post-judgment interest at the highest allowable rate, reasonable attorneys' fees and costs incurred in this action, and any and all further relief that this Court determines to be just and appropriate.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FLORIDA CONSTITUTION, ART. X, § 24

104.    Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 - 90 and 100-102 above as though fully stated herein.

105.    Plaintiff and those similarly situated carvers are/were entitled to be paid the full minimum wage for each hour worked during their employment with Defendants.

106.    During their employment with Defendants, Plaintiff and those similarly situated carvers were forced to pay for uniforms, in violation of the Florida Constitution's tip-credit provision.

107.    Plaintiff and those similarly situated carvers also were required to prepare meats for more than 20% of their workweeks while still being paid pursuant to the tip credit.

108.    Defendants willfully failed to pay Plaintiff and those similarly situated carvers the full minimum wage for one or more weeks of work contrary to Article X, Section 24 of the Florida Constitution.

109.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and those similarly situated carvers have been damaged in the loss of minimum wages for one or more weeks of work with Defendants.

WHEREFORE, Plaintiff, on behalf of himself and those similarly situated, demands judgment against Defendants for unpaid minimum wages, an additional and equal amount of liquidated damages, or if liquidated damages are not awarded then prejudgment and post-judgment at the highest allowable rate, reasonable attorneys' fees and costs incurred in this action, and any and all further relief that this Court determines to be just and appropriate.

### THIRD CAUSE OF ACTION
### DECLARATORY RELIEF

110.    Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 - 90 above as though fully stated herein.

111.    Plaintiff and Defendants have a pending dispute under the Fair Labor Standards Act, which the Court has jurisdiction to hear pursuant to 28 U.S.C. § 1331.

112.    The Court also has jurisdiction to hear Plaintiff' request for declaratory relief pursuant to the Declaratory Judgment Act. 28 U.S.C. §§ 2201-2202.

113.    Plaintiff may obtain declaratory relief.

114.    Defendants employed Plaintiff and those similarly situated employees as carvers.

115.    Defendants failed to pay Plaintiff the full minimum wage.

116.    Defendants illegally deducted the tip credit from Plaintiff's pay while requiring Plaintiff and other carvers to pay for uniforms.

117.    Defendants violated the tip credit rules by requiring its carvers to perform non-tipped related duties more than 20% of their workweeks.

118.    Defendants failed to keep accurate time and pay records for Plaintiff and all class members pursuant to 29 U.S.C. § 211(c) and 29 C.F.R. Part 516.

119.    Plaintiff is entitled to the full minimum wage pursuant to 29 U.S.C. § 206.

120.    Defendants did not rely upon a good faith defense in their decision to make Plaintiff and other carvers pay for uniforms.

121.    Plaintiff is entitled to an equal amount of liquidated damages.

122.    It is in the public interest to have these declarations of rights recorded as Defendants still employ carvers subject to the same policies at issue.

123.    Plaintiff's declaratory judgment action serves the useful purpose of clarifying and settling the legal relations in issue.

124.    The declaratory judgment action terminates and affords relief from uncertainty, insecurity, and controversy giving rise to the proceeding.

WHEREFORE, Plaintiff demands a declaration of rights finding that an employer-employee relationship existed between Plaintiff and Defendants, that Plaintiff was not paid the full minimum wage by Defendants for each hour worked, that Defendants had a legal duty to pay Plaintiff proper compensation pursuant to the FLSA, that Defendants policies of requiring Plaintiff to pay for uniforms violates the FLSA, that Defendants failed to prove a good faith defense to their pay practice, and that Plaintiff is entitled to proper compensation, liquidated damages and reasonable attorneys' fees pursuant to the FLSA.

## RELIEF SOUGHT

Wherefore, Plaintiff demands an Order awarding:

(a) payment to them and all class members of minimum wages for all hours worked at the correct rate pursuant to the Fair Labor Standards Act and Article X, Section 24 of the Florida Constitution;

(b) an equal amount of liquidated damages pursuant to Fair Labor Standards Act and Article X, Section 24 of the Florida Constitution, or in the alternative pre-judgment and post-judgment interest at the highest rate allowed by law; and

(c) reasonable attorneys' fees and costs for all time worked by the attorneys for Plaintiffs in prosecuting this case pursuant to Fair Labor Standards Act and Article X, Section 24 of the Florida Constitution.

(d) certification of this case as a class action under the provisions of the Federal Rules of Civil Procedure Rule 23(b)(1),(2) and alternatively (3).

(e) certification of this case as a collective action under the provisions of the Fair Labor Standards Act.

Plaintiffs also demand a trial by jury.

Respectfully submitted this 1st day of May, 2014.

Carlos V. Leach, Esq.
Florida Bar No. 0540021
Morgan & Morgan, P.A.
20 N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:    (407) 420-1414
Facsimile:    (407) 245-3341
Email: cleach@forthepeople.com
Attorneys for the Plaintiff